**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

DONALD K. WASHBURN,

        Movant,

vs.

UNITED STATES OF AMERICA,

        Respondent.

No. 15-CV-010-LRR
No. 11-CR-100-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

*I.*    *INTRODUCTION AND PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . **2**

*II.*   *EVIDENTIARY HEARING* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

*III.*  *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**
      *A.*    *Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
      *B.*    *Admission of Stipulated Facts* . . . . . . . . . . . . . . . . . . . . . . **6**
          *1.*    *Performance* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**
              *a.*    *Evidentiary hearing and credibility* . . . . . . . . . . . . . **9**
              *b.*    *Cognitive issues* . . . . . . . . . . . . . . . . . . . . . . . . . **14**
              *c.*    *Influence of alcohol and medication* . . . . . . . . . . . . **15**
              *d.*    *Failure to advise* . . . . . . . . . . . . . . . . . . . . . . . . **17**
          *2.*    *Prejudice* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**
      *C.*    *Competency hearing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **20**
          *1.*    *Performance* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **20**
          *2.*    *Prejudice* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**
      *D.*    *Conflict of Interest* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **24**
          *1.*    *Actual conflict* . . . . . . . . . . . . . . . . . . . . . . . . . . . **26**
          *2.*    *Adverse effect* . . . . . . . . . . . . . . . . . . . . . . . . . . . **28**

*IV.*  *CERTIFICATE OF APPEALABILITY* . . . . . . . . . . . . . . . . . . . . . . . **30**

*V.*   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **31**

## I. INTRODUCTION AND PROCEDURAL HISTORY

The matter before the court is Donald K. Washburn's ("the movant") motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 ("Motion") (civil docket no. 1). The movant filed the Motion on January 20, 2015. On March 13, 2015, the court directed the government to file a brief in response to the Motion and further directed the movant's trial counsel to file affidavits responding to the movant's claims of ineffective assistance of counsel. *See* March 13, 2015 Order (civil docket no. 5). On April 13, 2015, the movant's trial counsel—Adam Zenor and Robert Barr, Jr. (collectively, "trial counsel")—filed affidavits with the court. *See* Zenor Affidavit (civil docket no. 7); Barr Affidavit (civil docket no. 8). On May 13, 2015, the government filed its Resistance (civil docket no. 12). On June 26, 2015, the movant filed a Reply (civil docket no. 17). On August 24, 2016, the court held an evidentiary hearing on the Motion. *See* August 24, 2016 Minute Entry (docket no. 22). The Motion is fully submitted and ready for decision.

## II. EVIDENTIARY HEARING

The district court must determine whether an evidentiary hearing is required on a motion brought under 28 U.S.C. § 2255. *See* 28 U.S.C. § 2255(b). "A petitioner is entitled to an evidentiary hearing on a [§] 2255 motion unless 'the motion and the files and the records of the case conclusively show that he is entitled to no relief.'" *Holder v. United States*, 721 F.3d 979, 993 (8th Cir. 2013) (alteration omitted) (quoting *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008)). "A § 2255 motion 'may be dismissed without hearing if (1) movant's allegations, accepted as true, would not entitle him to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact.'" *Winters v. United States*, 716 F.3d 1098, 1103 (8th Cir. 2013) (alteration omitted) (quoting *Koskela v. United States*, 235 F.3d 1148, 1149 (8th Cir. 2001)). In other words, "[n]o hearing is required . . . where the claim is inadequate on its face or if the record

affirmatively refutes the factual assertions upon which it is based." *Franco v. United States*, 762 F.3d 761, 763 (8th Cir. 2014) (quoting *Anjulo-Lopez*, 541 F.3d at 817).

On August 24, 2016, the court held a limited evidentiary hearing, during which the court permitted the parties to introduce evidence only with respect to two issues raised in the Motion: (1) whether trial counsel improperly coerced or pressured the movant to sign a plea agreement that he later rescinded and (2) whether trial counsel incorrectly advised the movant that the stipulation of facts in the plea agreement could not be used against him if he rescinded the agreement and proceeded to trial. *See* July 20, 2016 Order (docket no. 19) (scheduling the evidentiary hearing and defining its scope). The court concludes that it can resolve the remainder of the movant's claims strictly from the record. *See Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993) (holding that "[a]ll of the information that the court needed to make its decision with regard to [the movant's] claims was included in the record" and, therefore, the court "was not required to hold an evidentiary hearing" (citing Rule Governing Section 2255 Proceedings 8(a); *United States v. Raddatz*, 447 U.S. 667, 674 (1980))). As such, the court finds no need for a further evidentiary hearing with respect to the remaining issues raised in the Motion.

### III. ANALYSIS

In the Motion, the movant claims that he is entitled to § 2255 relief because (1) trial counsel provided ineffective assistance by failing to raise certain arguments when objecting to the admission at trial of stipulated facts from a rescinded plea agreement, (2) trial counsel provided ineffective assistance by failing to pursue a competency hearing, (3) trial counsel provided ineffective assistance by continuing to represent the movant after a conflict of interest arose, (4) his *Miranda* rights were violated during the 2010 execution of a search warrant and (5) his due process rights were violated by the government's purported misrepresentation of facts at the movant's trial. *See* Motion; *see also* Supplement to Question 12 (civil docket no. 1-1).

The movant did not raise the *Miranda* or due process issues on direct appeal. *See* Motion at 8; Supplement to Question 12 at 3. "A § 2255 petition is not a second direct appeal and issues raised for the first time in a § 2255 petition are procedurally defaulted." *Meeks v. United States*, 742 F.3d 841, 844 (8th Cir. 2014). Further, the movant has failed to brief the issues for purposes of the Motion. *See generally* Memorandum in Support of Motion (civil docket no. 1-2). Provided only with the movant's bare assertion of facts and conclusory statements of law, the court cannot properly address the movant's *Miranda* and due process claims. Therefore, the court shall consider the claims waived. Alternatively, the court finds that the claims are procedurally defaulted because neither cause and prejudice nor actual innocence is demonstrated. To the extent the *Miranda* and due process claims can be interpreted as claims of ineffective assistance of appellate counsel, *see* Motion at 8 (stating that "Appellate Counsel failed to raise this issue" when explaining the failure to raise the *Miranda* issue on direct appeal); Supplement to Question 12 at 3 (providing the same explanation for the due process issue), the movant's claims fail to rebut the presumption "that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy" or otherwise demonstrate ineffective assistance. *See Charboneau v. United States*, 702 F.3d 1132, 1136-37 (8th Cir. 2013) (quoting *United States v. Brown*, 528 F.3d 1030, 1033 (8th Cir. 2008), *cert. denied*, 555 U.S. 937); *see also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (identifying that there is no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points"). Accordingly, the court shall deny the Motion to the extent it seeks § 2255 relief on the grounds of any purported *Miranda* or due process violations.

The court shall proceed to discuss the movant's claims of ineffective assistance of trial counsel.

## A. *Applicable Law*

"The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel in criminal prosecutions." *Basham v. United States*, 811 F.3d 1026, 1028 (8th Cir. 2015) (citing U.S. Const. amend. VI; *Powell v. Alabama*, 287 U.S. 45 (1932); *Johnson v. Zerbst*, 304 U.S. 458 (1938); *Gideon v. Wainwright*, 372 U.S. 335 (1963)).  To succeed on a claim of ineffective assistance of counsel in violation of the Sixth Amendment, the movant must satisfy the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Weaver v. United States*, 793 F.3d 857, 860 (8th Cir. 2015).  Under *Strickland*, the movant "must show: (1) that his lawyer's representation fell below an objective standard of reasonableness; and (2) that the lawyer's deficient performance prejudiced the defendant." *Basham*, 811 F.3d at 1028; *see also Strickland*, 466 U.S. at 687 ("First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defendant.").

"To demonstrate deficient performance, a [movant] 'must show that counsel's representation fell below an objective standard of reasonableness.'" *Kelly v. United States*, 819 F.3d 1044, 1047 (8th Cir. 2016) (quoting *Strickland*, 466 U.S. at 688).  "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Strickland*, 466 U.S. at 687.  The court's assessment of counsel's performance must take into account all of the relevant circumstances "viewed as of the time of counsel's conduct." *Id.* at 690.  "The [movant] bears the burden to overcome the strong presumption that counsel's performance was reasonable." *Thomas v. United States*, 737 F.3d 1202, 1207 (8th Cir. 2013).  To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  "Failure to establish

either *Strickland* prong is fatal to an ineffective-assistance claim." *Ramirez v. United States*, 751 F.3d 604, 607 (8th Cir. 2014) (quoting *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011)).

The court shall address each of the movant's claims of ineffective assistance of counsel in turn.

## B. Admission of Stipulated Facts

On December 16, 2011, the movant signed a plea agreement in which he agreed to plead guilty to counts 13 and 46 of the indictment filed against him. *See* Movant Exhibit C (civil docket no. 1-5) at 2, 20. In the plea agreement, the movant stipulated to a series of facts supporting pleas of guilty to those counts. *See id.* at 4-9. By initialing the paragraphs in the plea agreement, the movant indicated that he had been advised of his rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 and that he waived such rights. *See id.* at 4. The movant further indicated that he "ha[d] no complaints" about trial counsel's representation, that he was not under the influence of any substance impairing his ability to understand the plea agreement, that he entered the agreement "freely and voluntarily" and that he understood "the nature of each offense to which" he agreed to plead guilty. *See id.* at 18-19. After the movant signed the plea agreement, a change of plea hearing was scheduled for January 17, 2012. *See* criminal docket no. 63. At some point after the change of plea hearing was scheduled, the movant decided to rescind the plea agreement. *See* Movant Exhibit D ("Movant Affidavit") (civil docket no. 1-6) at 3; Barr Affidavit at 5. The change of plea hearing was canceled and the movant's jury trial began on February 13, 2012. *See* February 14, 2012 Minute Entry (criminal docket no. 101).[1]

---

[1] The minute entry for the first day of the movant's jury trial was filed on February 14, 2012 but states that trial commenced on February 13, 2012. *See generally* February 14, 2012 Minute Entry.

Prior to trial, the government moved for a preliminary ruling on the admissibility of the stipulated facts from the parties' plea agreement. *See* Government's Motion for Preliminary Ruling (criminal docket no. 68). In support of its motion, the government emphasized that the movant waived his rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410. *See* Memorandum in Support of Government's Motion for Preliminary Ruling (criminal docket no. 68-1) at 4-5. Trial counsel resisted admission of the stipulated facts on various grounds, including the Fifth Amendment of the United States Constitution, Federal Rule of Evidence 403 and policy concerns. *See* Memorandum in Support of Resistance (criminal docket no. 71-1) at 3-6. The court granted the government's motion and permitted admission of the stipulated facts at trial, finding that the movant "waived his rights under Rule 410." *See* January 30, 2012 Order (criminal docket no. 72) at 6.

### 1. Performance

The movant argues that trial counsel was ineffective for failing to resist admissibility of the stipulated facts on grounds that the movant did not knowingly and voluntarily waive his rights under Rule 410. *See* Memorandum in Support of Motion at 10-13. The movant argues that, had trial counsel made such argument, an evidentiary hearing would have established that the waiver was not knowing and voluntary due to the movant's cognitive issues, his use of alcohol and prescription medication and his lack of understanding about the relevant provisions of the plea agreement. *Id.* at 13. In support of his argument, the movant submits a letter from Dr. Tony Myers dated December 13, 2011, three days before the movant signed the plea agreement, which states in relevant part: "Due to ongoing evaluation regarding cognitive decline, I recommend no driving and no unsupervised financial/legal decisions." Movant Exhibit A ("Dr. Myers letter") (civil docket no. 1-3). The movant further submits an affidavit from his wife stating that she informed trial counsel of the movant's "declining mental health" and gave trial counsel a copy of the Dr.

7

Myers letter.  *See* Movant Exhibit B ("Dolores Washburn Affidavit") (civil docket no. 1-4).  The movant also submits an affidavit on his own behalf, stating:

> [M]y lawyers pressured me to sign the deal for more than an hour, possibly two.  They said that I "had to" sign it. . . .  I reminded them about my doctor's orders not to make any important legal decisions, and explained by bad health, but . . . [trial counsel] told me it was nonsense. . . .  Nobody explained anything to me about any rights and protections under Federal Rule of Evidence 410 or Federal Rule of Criminal Procedure 11(f). . . .  My lawyers assured me that it was just a proposal, and that I could back out of the deal at any time all the way up until it was accepted by the judge, so there was no harm in signing the document. . . .  At the time that I signed the document, I was taking prescription medications for pain and had been drinking.

Movant Affidavit at 2 (formatting omitted).  Additionally, the testimony at the evidentiary hearing detailed the circumstances of the movant's signing of the plea agreement, particularly with respect to the movant's arguments regarding his lack of understanding of the plea agreement's provisions.

To show that trial counsel's performance was deficient, the movant must show that trial counsel "fell below an objective standard of reasonableness" in failing to argue that the movant's waiver of rights under Rule 410 was unknowing and involuntary.  *See Strickland*, 466 U.S. at 688.  "Under Rule 410, statements made in the course of plea negotiations are inadmissible against the defendant.  This right of the defendant, however, is waivable by agreement, unless there is 'some affirmative indication that the agreement was entered into unknowingly or involuntarily.'" *United States v. Quiroga*, 554 F.3d 1150, 1154 (8th Cir. 2009) (quoting *United States v. Young*, 223 F.3d 905, 909-10 (8th Cir. 2000)).  "The Supreme Court has explained that an inquiry into whether a waiver of rights is knowing, voluntary, and intelligent requires examination of 'the particular facts and circumstances surrounding that case, including the background and experience of the

accused.'" *Shafer v. Bowersox*, 329 F.3d 637, 650 (8th Cir. 2003) (alterations omitted) (quoting *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)). Therefore, to show deficient performance, the movant must point to "particular facts and circumstances" creating "some affirmative indication" that would alert trial counsel that the waiver was invalid, such that reasonably effective counsel would be expected to challenge admissibility of the stipulated facts on that ground. Despite putting forth numerous theories, the movant can make no such showing.

### a. *Evidentiary hearing and credibility*

Before proceeding to the merits of the movant's specific arguments with respect to this claim, the court finds it necessary to outline the testimony offered at the evidentiary hearing and to address what testimony the court finds credible.

At the hearing, the movant testified on his own behalf. He testified that he entertained the idea of pleading guilty only after trial counsel informed him that proceeding to trial would require the movant to pay $60,000 in additional legal costs to secure witnesses at trial. The movant testified that, on Friday, December 16, 2011, he met with trial counsel on two occasions during which they discussed plea agreements proposed by the government. The movant testified that the first meeting, which occurred in the afternoon, lasted approximately ten minutes. The movant testified that he quickly ended the meeting because he was unhappy with certain provisions of the plea agreement as it existed at that time. The movant testified that he met with trial counsel again at approximately 6:00 p.m. to further discuss the plea agreement. On direct examination, the movant indicated that the plea agreement discussed at the second meeting was the same as the one he was unhappy with at the earlier meeting. On cross-examination, the movant acknowledged that there were multiple versions of the plea agreement but he was unaware of the changes made to the different versions. The movant testified that, at the second meeting, trial counsel did not read the plea agreement to him, but instead merely pushed

him to sign it. Despite testifying that he did not read the plea agreement and that trial counsel did not read it to him, the movant testified to his knowledge of various provisions of the plea agreement, including restitution, portions of the stipulation of facts regarding his involvement in the mining business and the list of identified victims. Additionally, the movant testified that the contents of the plea agreement were untrue. The movant testified that trial counsel told him that, by signing the plea agreement, he would face a minimum of four years and a maximum of six years in prison. The movant testified that, after approximately thirty minutes, he excused himself from the meeting to smoke a cigarette. The movant testified that, during his cigarette break, trial counsel told him that he could sign the agreement that night but still back out of the agreement before Monday, December 19, 2011. The movant testified that, based on these representations from trial counsel, he signed the plea agreement without reading its provisions. The movant testified that he always intended to back out of the plea agreement before December 19, 2011, and that he only signed the agreement in the first place to stop trial counsel from constantly pushing him to do so. The movant testified that the second meeting on December 16, 2011 lasted approximately one hour. The movant testified that, on December 19, 2011, he left voice messages with trial counsel informing them that he wished to back out of the plea agreement.

At the hearing, trial counsel testified to a different version of events. Trial counsel testified that their meetings with the movant occurred on December 15, 2011 and lasted for several hours. Trial counsel testified that they reviewed an initial version of the plea agreement with the movant in the afternoon for approximately an hour and a half. Trial counsel testified that they read each paragraph of the initial plea agreement to the movant and took note of the provisions he disputed. Trial counsel testified that, after reviewing the initial version with the movant, the movant went home while trial counsel discussed the disputed provisions with the government's attorney. Trial counsel testified that the

government provided them with a revised plea agreement, which they reviewed with the movant during a second meeting beginning at approximately 5:00 p.m.  Trial counsel testified that they read each paragraph of the revised plea agreement to the movant, they answered any questions he had about certain provisions and the movant proceeded to initial each paragraph.  Trial counsel testified that the movant exhibited an understanding of the plea agreement's contents and that he initialed each paragraph voluntarily and without any pressure, promises or other factors that would potentially undermine the voluntariness of his agreement.  Trial counsel testified that they never indicated to the movant that he could back out from the plea agreement without consequence.  Trial counsel testified that they described the substance of Federal Rule of Evidence 410 to the movant and reviewed the waiver of rights under Rule 410 that was included in the plea agreement.  Trial counsel testified that they do not recall how they responded when the movant asked what sentence he was likely to receive, but they testified that they informed the movant that the plea agreement created the best opportunity to minimize his sentencing exposure under the United States Sentencing Guidelines.  Trial counsel acknowledged that they informed the movant that proceeding to trial would entail additional costs associated with witnesses and the presentation of evidence, but trial counsel testified that they did not emphasize that information as a reason for the movant to plead guilty.  Instead, trial counsel testified that proceeding to trial without incurring the additional costs would require different and more challenging trial preparation.  Trial counsel did not agree as to when the evening meeting concluded: Attorney Barr remembered the meeting lasting late into the night and potentially past midnight and Attorney Zenor remembered the meeting lasting until approximately eight o'clock.  Trial counsel testified that they did not receive voice messages from the movant on December 19, but instead testified that they only learned of the movant's intent to back out of the plea agreement in mid-January of 2012.

The court finds trial counsel's account of events to be more credible for the following reasons. First and foremost, trial counsel's testimony that the movant notified them in mid-January of 2012 that he wished to rescind the plea agreement comports with the record. On December 19, 2011, following the movant's signing of the plea agreement, the court scheduled a change of plea hearing for January 17, 2012. *See* Text Order to Continue (criminal docket no. 63). On January 20, 2012, the court filed a Trial Scheduling Order (criminal docket no. 67), which scheduled the movant's jury trial to begin on February 13, 2012. Therefore, at some point between January 16, 2012, when trial counsel moved to continue the change of plea hearing for unrelated reasons, and January 20, 2012, trial counsel apparently informed the court that the movant would not plead guilty and would proceed to trial. This timeline conforms to trial counsel's testimony. However, the movant claims that he informed trial counsel on December 19, 2011 that he wished to rescind the plea agreement. But if this is so, the movant does not explain why his desire to rescind the agreement was not disclosed to the court until one month later. The court finds that the most likely explanation for the court receiving notice in mid-January, rather than in December, is that trial counsel's version of events is correct. This discrepancy undermines the movant's claim that trial counsel advised him that he could rescind the plea agreement by December 19, 2011 without consequence and, by extension, undermines his claim that trial counsel *ever* told him that he could rescind the plea agreement without consequence. Second, the movant's professed knowledge of certain portions of his plea agreement—indicated through his testimony that the plea agreement was untrue and his discussion of restitution amounts, details from the stipulation of facts and the mention of certain victims—contradicts his testimony that he never read the plea agreement and that trial counsel never read it to him.[2] The movant testified on

---

[2] The movant testified that he complained to counsel about the various provisions
(continued...)

cross-examination that, as a businessperson, he recognizes the importance of reading and understanding the documents that he signs his name to. The inconsistencies in the movant's testimony on these issues undermines the movant's claim that he was unfamiliar with the contents of the plea agreement when he signed it. Finally, the movant has been prosecuted and convicted of fraud in this court on two separate occasions. Notably, facts underlying the movant's second prosecution, at issue in this matter, included false statements to the court during his term of supervised release resulting from the first prosecution. The movant has consistently proven incapable of being truthful to the court and, when viewed in this context, the discrepancies and inconsistencies in his testimony noted above take on additional significance and further undermine his credibility.

On the other hand, the inconsistencies between trial counsel's testimony were largely insignificant. The most notable inconsistency was Attorney Barr's recollection that the second meeting on December 15, 2011 concluded late at night, which differed from Attorney Zenor's recollection that it concluded at approximately 8:00 p.m.[3] This and any other inconsistencies do not significantly relate to the issues raised by the movant, and the court is satisfied that they are mere innocent misrecollections resulting from the passage of time.

---

[2](…continued)
that he disputed or believed to be untrue before ultimately signing the plea agreement. Therefore, the movant's testimony is clear that had knowledge of various contents of the plea agreement when he signed it in December of 2011, rather than gaining such knowledge only through a subsequent review of the plea agreement.

[3] The court notes that Movant Exhibit C appears to show that the plea agreement was signed on December 16, 2011, which supports Attorney Barr's recollection that the meeting concluded after midnight. *See* Movant Exhibit C at 20. However, for purposes of credibility, the court merely notes the inconsistency between trial counsel's testimony without making a specific finding on this matter.

For these reasons, the court finds the movant not to be a credible witness and finds trial counsel to be credible. The court will consider their testimony accordingly.

### b. Cognitive issues

The movant first argues that he was experiencing cognitive issues at the time he signed the plea agreement, rendering him incompetent and making his waiver of rights under Rule 410 invalid. *See* Memorandum in Support of Motion at 13. However, the record contradicts the movant's argument.

The only arguable indication that the movant experienced cognitive issues at the time he waived his rights came from the Dr. Myers letter.[4] However, the Dr. Myers letter included only a cursory reference to "ongoing evaluation regarding cognitive decline." *See* Dr. Myers letter. On its face, this letter takes no position on the movant's cognition or competence. Instead, it states only that the movant was under "ongoing evaluation," suggesting that Dr. Myers could draw no conclusions at the time he drafted the letter. *See id.* Further, it warns against "unsupervised . . . legal decisions," *see id.*, and the movant's waiver was indeed supervised by trial counsel, *see* Zenor Affidavit at 3-4; Barr Affidavit

---

[4] The movant also submits a medical report from neuropsychological testing conducted on February 2 and 8, 2012. *See* Movant Exhibit 1 (civil docket no. 17-1). Additionally, the record from the criminal case includes another medical report from cognitive testing conducted on January 30, 2012. *See* Exhibit to Motion for Competency Hearing (criminal docket no. 76-3). Both reports were prepared approximately one and one-half months after the movant signed the plea agreement. The extent to which these reports raise questions concerning the movant's competence is discussed more fully at Part III.C.2 below. Regardless of the reports' contents, however, they were incapable of supporting a resistance to admission of the stipulated facts, because the court ordered that the stipulated facts were admissible before the reports were available to trial counsel. *See* January 30, 2012 Order at 6 (finding that the movant validly waived his rights under Rule 410 and allowing for admission of the stipulated facts); Brief in Support of Motion for Competency Hearing (criminal docket no. 76-1) at 2 (stating that trial counsel received the January 30 medical report on January 31, 2012); *see also Strickland*, 466 U.S. at 690 (requiring courts to view "the reasonableness of counsel's challenged conduct . . . viewed as of the time of counsel's conduct").

at 4-5. In any event, to the extent the Dr. Myers letter could be interpreted by trial counsel as raising questions about the movant's cognition, such interpretation would contradict other more extensive medical evidence known to trial counsel at the time the movant waived his rights. *See* Attachment 1 to Zenor Affidavit (docket no. 16-1) at 6 (medical report prepared approximately two months prior to the Dr. Myers letter that states, among other things, that the movant "is still able to carry out daily living activities" and that "[h]e can handle his finances"); *see also id.* at 22 (medical report prepared approximately one month prior to Dr. Myers letter that states, among other things, that the movant's "[a]ttention span and concentration were normal" and "[f]und of knowledge was normal"). Further, trial counsel perceived nothing about the movant's behavior that raised any questions about his cognition or his ability to understand the rights he waived by signing the plea agreement. *See* Zenor Affidavit at 3-4 (describing that the movant "gave clear indication his decision to plea guilty was knowing and voluntary"); Barr Affidavit at 4-5 (stating that the movant "provided input" during the plea negotiation and that he "asked numerous questions" and "listen[ed] carefully" to trial counsel when they explained the plea agreement, which the movant indicated he understood). In short, trial counsel had no basis for arguing that the movant's waiver of rights under Rule 410 was invalid due to any cognitive issues. Therefore, trial counsel's failure to resist admission of the stipulated facts on that ground was not deficient performance.

### c. *Influence of alcohol and medication*

Second, the movant argues that he was under the influence of alcohol and prescription pain medication at the time he signed the plea agreement, making his waiver of rights under Rule 410 unknowing and involuntary. *See* Memorandum in Support of Motion at 13. However, the record contradicts the movant's argument.

In the plea agreement, the movant initialed his acknowledgment that he was "not now on or under the influence of, any drug, medication, liquor, or other substance."

Movant Exhibit C at 18. In the second revised final Presentence Investigation Report ("PSIR"), the movant "reported that he last consumed alcohol in 2005." PSIR (criminal docket no. 171) at 44. In October of 2011, the movant denied to his health care provider that he drank alcohol, although he also stated that he "occasionally" drank "a Miller Lite Beer." *See* Attachment 1 to Zenor Affidavit at 6, 18. The movant now implies that he was under the influence of alcohol on December 16, 2011. Movant Affidavit at 2. The record, as reflected in the PSIR and the movant's own medical records, plainly contradicts the movant's claim in his affidavit.[5] The movant's claim that he was under the influence of prescription pain medication is also contradicted by the record. While the movant's physical maladies are well-documented, in the two months before he waived his rights under Rule 410, the only medications prescribed to the movant related to his diabetes. *See* Attachment 1 to Zenor Affidavit at 11, 21. Because the medical records do not reflect any "prescription medications for pain," the movant's claim that he was under the influence of such medication is contradicted by the record. Further, even if the movant consumed alcohol or pain medication, they did not result in him being "impaired in any discernable way" to reasonably lead trial counsel to question the validity of the movant's waiver. *See* Barr Affidavit at 7; *see also* Zenor Affidavit at 4 ("[The m]ovant . . . did not appear to be under the influence of any substances."). Trial counsel had no basis for arguing that the movant's waiver of rights under Rule 410 was invalid due to his consumption of alcohol or prescription pain medication. Therefore, trial counsel's failure to resist admission of the stipulated facts on that ground was not deficient performance.

---

[5] At the evidentiary hearing, the movant testified that he consumed one alcoholic drink when reviewing the plea agreement with trial counsel. However, because the issue of whether the movant was under the influence of alcohol and medication was not within the scope of the evidentiary hearing, the court declines to rely on such testimony. There is sufficient evidence in the record of the movant's scant alcohol consumption for the court to find that he did not consume alcohol to the point of intoxication on the night he signed the plea agreement.

### d.	Failure to advise

Third, the movant argues that he did not understand his rights under Rule 410 at the time of his waiver and further argues that trial counsel "pressured" him to enter the plea agreement, failed to advise the movant about Rule 410 and assured the movant that he could "back out of the deal." *See* Memorandum in Support of Motion at 13; Movant Affidavit at 2. However, both the record and the evidence introduced at the evidentiary hearing undermine the movant's arguments.

In the plea agreement, the movant agreed that: (1) he was advised of his rights under Rule 410 and opted to waive them, Movant Exhibit C at 4; (2) he "read each of the provisions of this entire plea agreement with the assistance of counsel and understands its provisions," *id.* at 18; (3) he had "no complaints about [his] lawyer's representation," *id.*; and (4) he entered the plea agreement "freely and voluntarily" and "without . . . coercion of any kind," *id.* at 19. At the evidentiary hearing, the movant testified that he signed the plea agreement and its provisions without knowing the contents. The movant further testified that he only signed the agreement because trial counsel told him that he could back out of the agreement without consequence. However, for the reasons noted in Part II.B.1.a above, the court finds the movant's testimony on these issues to not be credible. After hearing all of the testimony at the evidentiary hearing, the court finds that trial counsel in fact read each provision of the plea agreement to the movant before he signed it and ensured that he understood the rights that he waived. This includes the movant's waiver of rights under Rule 410, which provision states that the stipulation of facts "may be used against [the movant] at any time in any proceeding should [the movant] . . . refuse to follow through on this plea agreement, *regardless of whether the plea agreement has been accepted by the Court*." Movant Exhibit C at 4 (emphasis added). By reading this provision to the movant and ensuring his understanding of its meaning, trial counsel properly advised the movant that he could not rescind the plea agreement without incurring

the consequences of the waiver of rights under Rule 410. Any suggestion by the movant that trial counsel affirmatively advised him otherwise, despite the language of the plea agreement, is not credible.

Additionally, the court finds that trial counsel did not pressure the movant to sign the plea agreement in any way that would undermine the voluntariness of the movant's waiver. It is clear from trial counsel's testimony that they believed the plea agreement provided the movant with the best opportunity to minimize his sentencing exposure. However, trial counsel testified that they made it clear to the movant that the choice to plead guilty belonged to him alone. The plea agreement that the movant ultimately signed was in fact a revised plea agreement that contained revisions requested by the movant, reflecting his active role in the plea agreement process. To the extent that the movant eventually became unhappy with the plea agreement that he signed, it was not the result of any improper pressure or coercion by trial counsel. In light of these circumstances, trial counsel had no basis for arguing that the movant failed to understand the plea agreement. Therefore, trial counsel's failure to resist admission of the stipulated facts on that ground was not deficient performance.

In sum, there is no basis in law or in fact to support the movant's argument that trial counsel's performance was deficient in failing to resist admission of the stipulated facts on various grounds that the movant's waiver of rights under Rule 410 was invalid. Accordingly, the movant's claim of ineffective assistance of counsel fails with respect to this claim. *See Ramirez*, 751 F.3d at 607 ("Failure to establish either *Strickland* prong is fatal to an ineffective-assistance claim." (quoting *Worthington*, 631 F.3d at 498)). Nevertheless, the court shall discuss this claim under *Strickland*'s second prong.

## 2.    *Prejudice*

The movant argues that trial counsel's alleged error resulted in prejudice because it enabled the government to introduce the stipulation of facts, which the movant describes as "the core of the prosecution's case." Memorandum in Support of the Motion at 23. However, the movant has presented no credible evidence that the stipulation of facts would have been excluded from evidence had trial counsel resisted admission on the basis that the waiver of rights under Rule 410 was invalid. On the contrary, as the court discussed above, the record does not support a conclusion that the movant's waiver of rights was invalid. "[I]f there is no reasonable probability that [a] motion would have been successful, [the movant] cannot prove prejudice." *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *see also Voytik v. United States*, 778 F.2d 1306, 1310 (8th Cir. 1985) (stating that counsel's failure to file a post-trial motion does not result in actual prejudice where the record establishes that the motion would be unsuccessful). The record establishes no reasonable probability that resisting admission of the stipulated facts on the grounds now urged by the movant would have successfully excluded them from admission at trial. Moreover, even if the stipulated facts had not been admitted, the jury would have returned guilty verdicts in light of the overwhelming evidence of the movant's guilt. Accordingly, the movant cannot show prejudice under *Strickland*'s second prong and his claim of ineffective assistance of counsel fails with respect to this claim.[6]

---

[6] In arguing that he was prejudiced by trial counsel's errors, the movant describes how such prejudice was "brought about by the deficiencies of both of his own counsel and of the trial court" and that such "deficiencies combined to permit the introduction of" the stipulation of facts. Memorandum in Support of Motion at 22-23. To the extent the movant argues that prejudice results from the cumulative impact of the numerous errors alleged in the Motion, such argument plainly fails. Claims of ineffective assistance of counsel "cannot build a showing of prejudice on a series of errors, none of which would

(continued...)

## C. Competency Hearing

The movant argues that trial counsel provided ineffective assistance by failing to investigate the movant's competence and pursue a competency hearing. *See* Memorandum in Support of Motion at 13-18. The movant contends that trial counsel were made aware of facts demonstrating that the movant was incompetent—namely, the Dr. Myers letter—and that it was unreasonable not to press for a competency hearing based on such information. *See id.* at 15-16. The movant acknowledges that trial counsel did, in fact, move for a competency hearing, *see* Motion for Competency Hearing (criminal docket no. 76), and a hearing was set by the court, *see* February 3, 2012 Order (criminal docket no. 77). Memorandum in Support of Motion at 16. However, the movant argues that trial counsel committed error by withdrawing the request for a competency hearing after they were unable to secure the necessary evidence and witnesses prior to the hearing set by the court, *see* Motion to Withdraw Motion (criminal docket no. 94), and by failing to revisit the competency issue at a later date. *See* Memorandum in Support of Motion at 16-17.

### 1. Performance

A hearing to determine a defendant's competency is warranted

> if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

---

[6](…continued)
by itself meet the prejudice test." *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006) (quoting *Hall v. Luebbers*, 296 F.3d 685, 692 (8th Cir. 2002)); *see also, e.g.*, *Shelton v. Mapes*, 821 F.3d 941, 950 (8th Cir. 2016) ("*Strickland* does not authorize a cumulative inquiry of counsel's performance. 'Errors that are not unconstitutional individually cannot be added together to create a constitutional violation.'" (quoting *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996)) (internal citations omitted)).

18 U.S.C. § 4241(a). "Mental illness and cognitive impairment are not synonymous with incompetence . . . and 'a mental deficiency or . . . bizarre, volatile, and irrational behavior does not necessarily make a defendant incompetent to stand trial.'" *United States v. Dahl*, 807 F.3d 900, 904 (8th Cir. 2015) (quoting *United States v. Ghane*, 593 F.3d 775, 779 (8th Cir. 2010)) (alteration omitted). "Counsel's failure to request a competency hearing [is] objectively unreasonable if evidence raised substantial doubt about [the defendant's] mental competence to stand trial." *Ford v. Bowersox*, 256 F.3d 783, 786 (8th Cir. 2001).

Trial counsel filed the motion for a competency hearing on February 3, 2012—ten days before trial was scheduled to begin. Trial counsel filed the motion at the movant's request and based the motion on an occupational therapist's report that they learned of on January 31, 2012. *See* Zenor Affidavit at 6-7; *see also* Exhibit to Motion for Competency Hearing (criminal docket no. 76-3). The occupational therapist's report described indications that the movant had "a mild cognitive impairment." Exhibit to Motion for Competency Hearing at 1. Aside from this report, trial counsel had no prior medical evidence or personal observations to support an inquiry into the movant's competency. *See* Brief in Support of Motion for Competency Hearing (criminal docket no. 76-1) at 3-4; Zenor Affidavit at 6. Nevertheless, based on the occupational therapist's report, trial counsel moved for a competency hearing and sought multiple continuances to allow time for their ongoing pursuit of corroborative evidence that the movant was, in fact, incompetent. *See, e.g.*, Brief in Support of Motion for Competency Hearing at 8 (requesting a continuance of trial "if necessary" to determine the movant's competency); Motion to Continue Competency Hearing (criminal docket no. 80); Supplemental Motion to Continue Competency Hearing (criminal docket no. 89). Trial counsel's supplemental motion to continue described their investigation into a series of witnesses on the issue. *See* Supplemental Motion to Continue Competency Hearing at 2-3. Ultimately, the court continued the competency hearing for two days, but denied any further continuance of the

hearing or the trial. In its response to the motion for a competency hearing, the government emphasized the movant's prior attempts to delay trial and various other proceedings and argued that, in the event the court determined a competency examination was necessary, the Bureau of Prisons should conduct the examination and the movant should be placed in custody during its pendency. *See* Memorandum in Response to Motion for Competency Hearing (criminal docket no. 90) at 2-3, 7-10.

In sum, trial counsel (1) lacked evidence to corroborate the lone report that the movant experienced "mild cognitive impairment"; (2) pursued such evidence by investigating numerous witnesses; (3) had no personal observations suggesting that the movant was incompetent; and (4) faced the possibility that the movant would be placed in custody during any potential competency evaluation. Faced with this situation, trial counsel withdrew the motion for a competency hearing with the movant's approval. *See* Barr Affidavit at 8 (stating that the decision to withdraw the motion had "[the] [m]ovant's concurrence").

The court finds that trial counsel's decision to abandon pursuit of the competency hearing was entirely reasonable as a strategic decision informed by the facts and circumstances of the case. *See Weaver*, 793 F.3d at 860 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" (quoting *Strickland*, 466 U.S. at 690)); *see also Strickland*, 466 U.S. at 689 (instructing the court to consider trial counsel's conduct "in light of all the circumstances" and to "indulge a strong presumption" that trial counsel's performance is reasonable). The occupational therapist's report does not amount to "substantial doubt" as to the movant's competence, particularly in light of trial counsel's many months of interactions with the movant prior to their receipt of the report, during which he exhibited no signs of incompetence. Accordingly, trial counsel's performance was not deficient and the movant's claim of ineffective assistance of counsel fails with respect to this claim. *See*

*Ramirez*, 751 F.3d at 607 ("Failure to establish either *Strickland* prong is fatal to an ineffective-assistance claim." (quoting *Worthington*, 631 F.3d at 498)). Nevertheless, the court shall discuss this claim under *Strickland*'s second prong.

### 2. *Prejudice*

The movant makes no substantive argument regarding prejudice resulting from the absence of a competency hearing. *See* Memorandum in Support of Motion at 22-27 (discussion of prejudice). Instead, the movant's prejudice arguments stem solely from admission of the stipulated facts and the alleged errors surrounding it. *See id.* To the extent the movant argues prejudice resulting from the absence of a competency hearing, however, such argument fails. The movant cannot show that, but for trial counsel's alleged error, there is a reasonable probability that he would have been found incompetent to stand trial. *See Paul v. United States*, 534 F.3d 832, 845 (8th Cir. 2008) (framing the prejudice analysis for claims of ineffective assistance involving competency hearings).

The occupational therapy report that served as the basis for trial counsel's motion for competency hearing found indications that the movant experienced "mild cognitive impairment." Exhibit to Motion for Competency Hearing at 1. However, it also described irregularities undermining the reliability of that diagnosis. Particularly, the report states that its diagnosis "may not be representative of [the movant's] true abilities" because his test scores were outside the normal range "expected to ensure valid measures of abilities." *Id.* at 2. The report then states that the movant's abnormal test scores may have been affected by "a confounding factor," which could include "frequent/extended interruptions [during testing] or symptom exaggeration/manipulation." *Id.* It is worth noting that confounding factors were particularly likely in the movant's case because his testing was interrupted numerous times, *see id.*, and he has a lengthy history of malingering, *see* May 21, 2012 Order (criminal docket no. 152) (emphasizing the movant's "history of malingering, both in this case and in his prior 2005 case").

A second cognitive evaluation conducted in early-February of 2012 found that the movant scored "far below average" on various tests, s*ee* Movant Exhibit 1 at 6-7, but this diagnosis was similarly plagued by reliability concerns. For example, the report found the movant's scores to be "highly abnormal" and observed that his performance was significantly worse than if he had simply guessed at correct responses, among other irregularities. *See id.* at 7. Despite the movant's abnormally low scores on the cognitive tests, the report also stated that the movant's "[c]onversation and thought were logical, goal-directed, and non-tangential." *Id.* at 6.

Due to the abnormalities and inconsistencies in these reports, the movant cannot show a reasonable probability that he would have been found incompetent to stand trial if trial counsel had pressed the issue. And even if the reports lacked such abnormalities and inconsistencies, "cognitive impairment [is] not synonymous with incompetence." *Dahl*, 807 F.3d at 904. Trial counsel observed no firsthand indication that the movant was incompetent during the course of their representation. *See* Brief in Support of Competency Hearing at 3. Likewise, the court observed no indication that the movant was incompetent during his appearances before the court. Based on the evidence, the court would not have found the movant incompetent to stand trial. Accordingly, the movant cannot show prejudice under *Strickland*'s second prong and his claim of ineffective assistance of counsel fails with respect to this claim.

### D. Conflict of Interest

The movant argues that trial counsel was ineffective for violating "an affirmative duty" to withdraw from representing the movant after the court ruled that the stipulated facts would be admitted into evidence. *See* Memorandum in Support of Motion at 21-22. The movant claims that admission of the stipulated facts created a conflict of interest because trial counsel knew of evidence that contradicted those facts at the time trial counsel and the movant signed the plea agreement. *See id.* at 20. The movant argues that trial

counsel's continued representation "was in conflict with his own interest in preserving his professional reputation and keeping his fee" because, according to the movant, it was malpractice for trial counsel to advise the movant to sign the plea agreement. *See id.* at 20-21. The movant further claims that the existence of trial counsel's signature on the stipulated facts "converted [the movant's] own attorney into a witness against [the movant]," creating "an additional layer of conflict." *Id.* at 21. The movant also alleges that the court committed error by "fail[ing] to conduct any inquiry" into the purported conflict of interest. *See id.*

To the extent the movant argues that the court failed in its obligation to inquire into trial counsel's purported conflict of interest, the argument fails because it was raised and decided on direct appeal. *See Davis v. United States*, 673 F.3d 849, 852 (8th Cir. 2012) ("Claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." (alteration omitted)). On direct appeal, the Eighth Circuit Court of Appeals addressed the movant's claim that the court failed "to further inquire about counsel's conflict and/or have [the movant] sign a waiver of some sort acknowledging that his counsel was not conflict-free." *United States v. Washburn*, 728 F.3d 775, 784 (8th Cir. 2013). The Eighth Circuit concluded that "[t]he court did not '[find] that a potential conflict existed,' as [the movant] claims" and held that the movant failed to "demonstrate that his trial counsel had a potential conflict of interest and [his] claim on appeal fails, as the district court had 'no further obligation.'" *Id.* at 785 (second alteration in original). The movant cannot now relitigate the claim in this collateral proceeding. However, because the Eighth Circuit expressly declined to decide whether the alleged conflict of interest amounted to ineffective assistance of counsel, *id.* at 785-86, the court shall proceed to address the issue.

"The Sixth Amendment right to counsel has been interpreted to provide for representation that is 'free from conflicts of interest or divided loyalties.'" *Caban v. United*

*States*, 281 F.3d 778, 781 (8th Cir. 2002) (quoting *United States v. Reed*, 179 F.3d 622, 624 (8th Cir. 1999)). To prove ineffective assistance of counsel based on a conflict of interest, "a defendant must prove the existence of an actual conflict of interest." *Morelos v. United States*, 709 F.3d 1246, 1252 (8th Cir. 2013) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)). "An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Id.* (quoting *Noe v. United States*, 601 F.3d 784, 790 (8th Cir. 2010)). To show that the conflict adversely affected counsel's performance, a defendant must show that the effect was "actual and demonstrable, causing the attorney to choose to engage or not to engage in particular conduct." *Id.* (quoting *Covey v. United States*, 377 F.3d 903, 908 (8th Cir. 2004)). This requires the defendant to "identify a plausible alternative defense strategy or tactic that defense counsel might have pursued, show that the alternative strategy was objectively reasonable under the facts of the case, and establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." *Id.* (quoting *Winfield v. Roper*, 460 F.3d 1026, 1039 (8th Cir. 2006)). Upon a showing of an actual conflict of interest that adversely affects counsel's performance, prejudice is presumed if the conflict of interest "arose from jointly representing multiple defendants." *Id.* (citing *Cuyler*, 446 U.S. at 349-50). However, the Eighth Circuit has declined to decide whether prejudice is presumed where the conflict of interest does not involve joint representation of multiple defendants. *See Williams v. Ludwick*, 761 F.3d 841, 846 (8th Cir. 2014).

The court need not reach the issue of prejudice, whether it may be presumed or not, because it concludes that the movant cannot show an actual conflict of interest that adversely affected trial counsel's performance.

### 1.   *Actual conflict*

The movant argues that there was an actual conflict of interest because trial counsel knew of exculpatory evidence but nevertheless advised the movant to plead guilty and that,

26

as a result, trial counsel's interest in protecting their reputations conflicted with their representation of the movant. *See* Memorandum in Support of Motion at 21; *see also United States v. Soldevila-Lopez*, 17 F.3d 480, 486 (1st Cir. 1994) ("Courts have recognized actual conflicts of interest between an attorney and his client when pursuit of a client's interests would lead to evidence of an attorney's malpractice." (citing *United States v. Ellison*, 798 F.2d 1102, 1106-08 (7th Cir. 1986), *cert. denied*, 479 U.S. 1038; *Mathis v. Hood*, 937 F.2d 790, 795 (2d Cir. 1991))). The only purported evidence that the movant points to in support of this argument is a series of handwritten notes indicating that the movant had provided accurate financial information to the United States Probation Office during his term of supervision on his prior conviction. *See* Barr Affidavit at 10; *see also* Exhibit to Motion to Supplement the Record, *United States v. Washburn*, App. No. 12-3080 (Oct. 23, 2012 docket entry) (copies of handwritten notes). If authentic, the handwritten notes would rebut the charges of false statements made to the United States Probation Office alleged in the Indictment. However, despite trial counsel's efforts, the handwritten notes were incapable of being "truthfully authenticated or verified." Barr Affidavit at 10 (stating that the movant's probation officer advised that he had never received the notes, and stating that there was no indication of the notes' existence in the probation office's records). Additionally, the notes were brought to trial counsel's attention under suspicious circumstances: the movant gave the notes to trial counsel only after learning that his probation officer would not provide beneficial testimony to his defense, and he was unable to provide consistent information or recall "the facts and circumstances surrounding these documents and how, if at all, they were delivered to" the probation office. Zenor Affidavit at 8-9.

Where counsel advises a client to plead guilty despite the existence of potentially exculpatory evidence, such advice is ineffective only if the evidence is likely to change the outcome of a trial. *Cf. Hill*, 474 U.S. at 59 (describing that ineffective assistance claims

based on counsel's "failure to investigate or discover potentially exculpatory evidence . . . . will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial").  Because of the suspicious origins of the handwritten notes and trial counsel's inability to authenticate them, the evidence would have had no impact on the outcome of the movant's jury trial because it would not have been admitted due to a lack of authentication.  Therefore, trial counsel committed no professional error in advising the movant to plead guilty despite the existence of the handwritten notes.  By extension, there was no conflict between trial counsel's professional reputation and their continued representation of the movant.  Therefore, the movant cannot show that trial counsel operated under an actual conflict of interest, and trial counsel had no duty to withdraw from the representation.

### 2. *Adverse effect*

Even if the movant could show that the alleged conflict of interest existed, he cannot show that it had an adverse effect on trial counsel's performance.  Under the movant's theory, the existence of the plea agreement and stipulation of facts—in conjunction with the handwritten notes purportedly rebutting them—was evidence of trial counsel's malpractice.  The movant suggests that the purported conflict of interest made trial counsel unwilling to attack the stipulated facts at trial, because doing so would raise questions of why trial counsel advised the movant to plead guilty despite exculpatory evidence (and despite the alleged invalidity of the movant's waiver of rights, discussed in Part III.B above).  *See* Memorandum in Support of Motion at 8-9, 21-22, 25-26.  The movant claims that trial counsel was particularly unwilling to attack the stipulation of facts because his signature appeared on the stipulation of facts admitted into evidence.  In support of his claim that trial counsel "was afraid to get near the issue," the movant describes how trial counsel declined to incorporate attacks on the stipulation of facts into the defense, and argues that counsel operating without a conflict could have confronted the stipulation of

facts "head-on." *See id.* at 25-26.

The decision of whether to confront unfavorable evidence depends, in part, on "what evidence was available to counsel to rebut the [unfavorable] evidence." *See Johnson v. United States*, 860 F. Supp. 2d 663, 818 (N.D. Iowa 2012); *see also Morelos*, 709 F.3d at 1252 (requiring a showing "that the alternative strategy was objectively reasonable under the facts of the case" to demonstrate an adverse effect (quoting *Winfield*, 460 F.3d at 1039)). The movant has not demonstrated that there was sufficient evidence from which trial counsel could hope to rebut the stipulation of facts. The only alternative strategies that the movant proposes involve introducing the handwritten notes or other evidence to contradict the stipulated facts, challenging the validity of the stipulated facts on grounds that the movant was not competent to agree to such facts and "putting [the movant] on the stand to testify that the stipulations were untrue." Memorandum in Support of Motion at 26. These alternative strategies were not objectively reasonable. Trial counsel could not introduce the handwritten notes because they had no means of authenticating them. Further, trial counsel could not reasonably introduce evidence of the movant's incompetence because the only evidence to that effect was plagued with inconsistencies and abnormalities, as discussed above. Lastly, trial counsel could not simply "put [the movant] on the stand," because the decision to testify rested with the movant alone. *See Thomas v. United States*, 737 F.3d 1202, 1207-08 (8th Cir. 2013) (stating that it is a fundamental decision of the defendant whether to testify at trial (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983))). Because trial counsel's minimization of the unfavorable evidence was reasonable trial strategy and the alternative strategies put forth by the movant are objectively unreasonable under the facts of the case, the movant cannot show that the alleged conflict of interest had any adverse effect. Therefore, even if an actual conflict of interest existed, it did not have an adverse effect on trial counsel's representation. Accordingly, the movant's claim of ineffective assistance of counsel fails

with respect to this claim.

Because the movant cannot show ineffective assistance of counsel on any of the claims raised in the Motion, the court shall deny the Motion.

## IV. CERTIFICATE OF APPEALABILITY

In a 28 U.S.C. § 2255 proceeding before a district judge, the final order is subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held. *See* 28 U.S.C. § 2253(a). "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals." 28 U.S.C. § 2253(c)(1)(B). A district court possesses the authority to issue certificates of appealability under 28 U.S.C. § 2253(c) and Federal Rule of Appellate Procedure 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000) (per curiam); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997); *Tiedeman*, 122 F.3d at 523. To make such a showing, the movant must demonstrate that the issues are debatable among reasonable jurists, a court could resolve the issues differently or the issues deserve further proceedings. *Cox*, 133 F.3d at 569 (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)); *see also Miller-El*, 537 U.S. at 335-36 (reiterating standard).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy [28 U.S.C.] § 2253(c) is straightforward: [t]he [movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a federal habeas petition is dismissed on procedural grounds without reaching the underlying constitutional claim, the movant must

show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, the court finds that the movant cannot make the requisite "substantial showing" with respect to the claims that raised in the Motion. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Because the movant does not present a question of substance for appellate review, there is no reason to grant a certificate of appealability. Accordingly, the court shall deny a certificate of appealability. If the movant desires further review of the motion, he may request issuance of the certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman*, 122 F.3d at 520-22.

## V.  CONCLUSION

The court has thoroughly reviewed the record and finds that the denial of the motion comports with the Constitution, results in no "miscarriage of justice" and is consistent with the "rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962); *see also United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) ("Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." (citing *Poor Thunder v. United States*, 810 F.2d 817, 821 (8th Cir. 1987))). The movant's claims do not justify relief, and there is no basis to grant a certificate of appealability.

**IT IS THEREFORE ORDERED**:

(1) The movant's 28 U.S.C. § 2255 motion (civil docket no. 1) is denied.

(2) A certificate of appealability is denied.

**DATED** this 30th day of August, 2016.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA